## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **Thaddous R. Daniel, Sr.,** | ) | **Case No. 08 B 27165** |
| | ) | |
| Debtor. | ) | |
| | ) | |

### MEMORANDUM OF DECISION

This Chapter 7 case is before the court on the motion of a creditor, Deutsche Bank National Trust Company, to confirm termination of the automatic stay affecting its collateral, the home of the debtor, Thaddous Daniel.  The motion is based on Daniel's having a previous Chapter 13 case that was dismissed during the year before he filed the current case, triggering termination of the automatic stay under § 326(c)(3) of the Bankruptcy Code (Title 11, U.S.C.).  Daniel has objected to the motion, arguing that § 362(c)(3) terminates the automatic stay only as to himself personally and whatever property he may own that is not property of his bankruptcy estate, but not as to property—such as his home—that is included in the bankruptcy estate.

As discussed below, most reported decisions support Daniel's argument, but § 362(c)(3) is better interpreted as imposing no limitation of the sort Daniel proposes.  Termination of the stay under § 362(c)(3) applies to acts affecting estate property as well as other actions.  Accordingly, the bank's motion will be granted.

## Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, but 28 U.S.C. § 157(a) allows them to refer these cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has made such a reference of its bankruptcy cases. N.D. Ill. Internal Operating Procedure 15(a). Pursuant to this reference, a bankruptcy judge has jurisdiction under 28 U.S.C. § 157(b)(1) to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." A proceeding regarding the termination of the automatic stay is a core proceeding. 28 U.S.C. § 157(b)(2)(G).

## Findings of Fact

The relevant facts are not in dispute. On January 27, 2006, Deutsche Bank made a loan to Thaddous Daniel secured by a mortgage on his home. On November 7, 2007, the bank filed a state court complaint to foreclose the mortgage. Three days later, Daniel filed a Chapter 13 case, No. 07 B 21126. After ten months, on September 15, 2008, the bankruptcy was dismissed on the bank's motion, because Daniel had not made the current mortgage payments that his plan required.

Less than a month after the dismissal, on October 9, 2008, Daniel filed the current case, No. 08 B 27165, again under Chapter 13.[1] Because the case was filed

---

[1] Daniel later converted the case to one under Chapter 7. The conversion has no effect on the issues raised by the bank's motion.

within a year of the first case's dismissal, § 362(c)(3) of the Bankruptcy Code ap-

plied, terminating the automatic stay unless the court, on motion of a party in

interest and after a hearing completed during the first thirty days that the case

was pending, entered an order extending the stay.  Daniel moved to extend the

automatic stay, but his motion was denied on November 6, 2008, because he

failed to give proper notice.  No new motion to extend the stay was filed, and the

thirty-day period following the filing of the case expired on November 9, 2008.

 On December 2, 2008, the bank filed the pending motion, authorized by

§ 362(j), seeking a court order that would confirm termination of the automatic

stay under § 362(c)(3) and so allow the bank to pursue its foreclosure action.

Daniel objected to this motion, and the parties have briefed the legal issue that it

raises.

### Conclusions of Law

Section 362(c) of the Bankruptcy Code governs termination of the automatic

stay imposed by § 362(a).  An additional provision—paragraph (3)—was added

to § 362(c) by the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 (BAPCPA), to provide for termination of the automatic stay in certain situa-

tions of successive bankruptcy filings.  The new provision is lengthy (over 400

words) and not clearly drafted.  *See In re Curry*, 362 B.R. 394, 397 (Bankr. N.D. Ill.

2007) (collecting authorities discussing difficulties in interpreting paragraph

(c)(3)).  It is possible, however, to set out a four-part outline of the paragraph's

operation without controversy:

*First*, an introduction defines the cases to which paragraph (3) applies:

- any case of an individual debtor in Chapter 7, 11, or 13,

- as to whom "a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed,"

- but not if the case was "refiled under a chapter other than chapter 7 after dismissal under section 707(b)."

*Second*, for any case within this scope of coverage, subparagraph (A) provides for termination of the stay thirty days after the case was filed, using the phrase "with respect to" four times: "[T]he stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case."

*Third,* subparagraph (B) provides that after notice and "a hearing completed before the expiration of the 30-day period," a party in interest may obtain a court order extending the stay on a showing that "the filing of the later case is in good faith as to the creditors to be stayed."

*Fourth,* subparagraph (C) creates a presumption that a case was not filed in good faith if any of a set of defined circumstances exist, and it requires clear and convincing evidence to rebut the presumption.

There is no question that the current case is subject to § 362(c)(3). Thaddous Daniel was an individual in a case under Chapter 13 that was dismissed within a year of the date the current case was filed. Likewise, there is no question regarding any extension of the stay. Daniel's only motion to extend the stay

4

was denied, and the thirty-day period for granting any new motion has expired.

Rather, the dispute between Daniel and the bank involves the scope of the stay

termination that both parties acknowledge has taken place. Specifically, the issue

is the extent of the stay termination "with respect to the debtor."

The bank's position is that terminating the stay "with respect to the

debtor" allows the bank to take any action—including foreclosure of its mortgage

on Daniel's home—that would otherwise have been prohibited by the stay. Dan-

iel, on the other hand, reads "with respect to the debtor" as leaving the stay in

effect as to all property of his estate, including his home. This question of statu-

tory interpretation has been addressed in a number of published decisions, most

of which support Daniel.[2] The better reading of § 362(c)(3), however, allows the

bank to proceed with its foreclosure action.

A. *Read in context, termination of the stay "with respect to the debtor" is best
understood as excluding jointly-filing spouses.*

A fair assessment of the meaning of § 362(c)(3)(A)'s termination of the stay

"with respect to the debtor" should begin by recognizing that the phrase can

only be understood in context. Dictionary definitions of the terms are certainly

no help in determining whether, or to what extent, "with respect to the debtor" is

intended to limit stay termination. However, there are at least four different in-

terpretations of stay termination "with respect to the debtor" that can be support-

ed—and challenged—with contextual arguments. These interpretations are dis-

---

[2] *See* Laura B. Bartell, *Staying the Serial Filer—Interpreting the New Exploding
Stay Provisions of § 362(c)(3) of the Bankruptcy Code*, 82 Am. Bankr. L. J. 201, 208 nn.
57-58 (2008) (collecting authorities).

cussed below, together with the statutory context they implicate, in order of increasing plausibility.

     1.    *An "all-property" exclusion: distinguishing between actions against the debtor personally and actions against any property.*

The least plausible interpretation of "with respect to the debtor" would read the phrase as though it said "with respect to the debtor *personally*," making stay termination effective only as to *in personam* collection activity and excluding from the termination any *in rem* collection activity. This "all-property" exclusion from termination of the automatic stay under § 362(c) would allow a creditor to make collection calls and obtain a judgment against the debtor personally, but it would not allow enforcement of the judgment, since all property available for that purpose would remain subject to the stay.

Contextual support for the all-property exclusion comes from the structure of the automatic stay itself. As prescribed in § 362(a), the automatic stay applies to three kinds of collection activity:

(1) activity directed against "the debtor" personally, such as "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" (§ 362(a)(1));

(2) activity directed against property of the debtor's bankruptcy estate, such as "any act to obtain possession of property of the estate" and "any act to create,

perfect, or enforce any lien against property of the estate" (§ 362(a)(3) and (4));[3] and

(3) activity directed against "property of the debtor," such as "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case" (§ 362(a)(5)).

In the context of these three applications of the automatic stay, termination of the stay "with respect to the debtor" could be understood as applying only to the first, the stay of actions against "the debtor" personally, leaving the stay in effect as to acts against all property either within or outside of the debtor's estate.

However, there is an insurmountable difficulty with this interpretaion: it makes § 362(c)(3)(A) self-contradictory. Stay termination in paragraph (3)(A) is "with respect to *any action taken with respect to* a debt or *property securing such debt*" (emphasis added). For this provision to be meaningful, termination of the stay must allow at least some collection actions to proceed against property. Reading the phrase "with respect to the debtor" as an all-property exclusion would make § 362(c)(3)(A) oxymoronic, terminating the stay as to "any action

_____

[3] The estate of a debtor in bankruptcy consists of the property that can potentially be used to pay creditors. Under § 541(a)(1) of the Code, it includes "all legal or equitable interests of the debtor in property as of the commencement of the case" but generally excludes property that the debtor acquires after filing. Property may also be excluded from the estate through exemption under § 522. Pursuant to § 522(c), however, exempted property is "not liable during . . . the case for any debt of the debtor that arose . . . before the commencement of the case," so terminating the stay as to exempt property would have no effect on collection actions.

taken with respect to . . . property securing [a] debt," but at the same time, as limited by the phrase, not terminating the stay as to any property.

No reported decision has adopted the all-property exclusion in interpreting "with respect to the debtor" in § 362(c)(3)(A).

    2.    *An "estate-property" exclusion: distinguishing between actions against property of the debtor's bankruptcy estate and actions against either the debtor personally or non-estate property of the debtor.*

The reading that most reported decisions adopt starts with the three applications of the automatic stay noted above, but proposes that stay termination "with respect to the debtor" means "with respect to the debtor personally and to the debtor's non-estate property," leaving the stay in effect only as to property of the debtor's bankruptcy estate.

By excluding only estate property from termination of the stay—and so allowing creditors to enforce claims against the debtor's non-estate property—this reading of "with respect to the debtor" gives a more expansive scope to stay termination under § 362(c)(3)(A) than the all–property exclusion.  The expansion, however, has little practical effect.  Because all property that the debtor owned before filing bankruptcy is either part of the estate or exempt, the estate-property exclusion would only allow a judgment to be enforced against a Chapter 7 debtor's post-bankruptcy earnings and acquisitions, and only until the debtor received a discharge, which usually happens within 80 to 100 days after the

bankruptcy filing.[4]  In Chapter 13, the expansion would have no effect whatever, because any property the debtor acquired after the filing of the case would be estate property under § 1306(b).[5]  In cases under either chapter, the estate-property exclusion would not allow a secured creditor like Deutsche Bank, holding a lien on the debtor's pre-bankruptcy property, to continue a foreclosure proceeding or take any other action to enforce its lien.

By allowing collection actions to proceed against at least some property, the estate-property exclusion does avoid the all-property exclusion's problem of self-contradiction.  However, it still presents significant contextual difficulties.

First, reading "with respect to the debtor" to exclude estate property renders largely meaningless the provision in § 362(c)(3)(B) that allows parties in interest to seek an order extending the stay.  Parties in interest—the trustee and creditors of the estate—would only want an extension of the automatic stay if it would allow the trustee to sell estate property for the benefit of claimants to the estate.  They would have no reason to seek an extension of the stay simply to prevent assessments of personal liability against the debtor or collection actions against non-estate property that could not benefit them in any event.  *See In re Jones*, 339 B.R. 360, 364 (Bankr. E.D.N.C. 2006) (acknowledging that under the

---

[4] Under Fed. R. Bankr. P. 2003(a), a meeting of creditors in a bankruptcy case takes place between 20 and 40 days after the case is filed, and under Fed. R. Bankr. P. 4004(a) and (c)(1), discharge is entered 60 days thereafter unless some action is taken to extend that time.

[5] Section 1306(a)(1) expands the definition of estate property for Chapter 13 cases to include "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted."

estate-only interpretation of § 362(c)(3)(A), "it is unlikely that anyone other than the debtor would seek an extension" under § 362(c)(3)(B)).  Accordingly, the standing § 362(c)(3)(B) gives to parties in interest to avoid stay termination under § 362(c)(3)(A) suggests that this termination does allow secured creditors to take action against estate property.

More important, given the three distinct applications of the stay in § 362(a)—to actions against the debtor, actions against property of the estate, and actions against non-estate property of the debtor—it is difficult to see how a possible reference to only one of the applications—actions with respect to "the debtor"—can be read to apply to two of them, actions both against the debtor and against the debtor's non-estate property.

This problem appears to have been addressed only in *In re Jones*, 339 B.R. at 362:

> [T]he court interprets § 362(c)(3)(A) to terminate the stay [both] with respect to actions taken against the debtor and with respect to the debtor's property.  Although not directly applicable, § 102 provides some guidance.  Under the rules of construction provided in § 102(2), claims against the debtor include a claim against property of the debtor.  Section 101(12) defines debt as "liability on a claim." Section 362(c)(3)(A) terminates the stay with respect to a debtor's debts and, by definition, with respect to liability on claims including claims against property of the debtor.  *See* 11 U.S.C. §§ 101(12), 101(2).

This explanation is not workable.  It depends on § 102(2) to distinguish between a debtor's estate property and non-estate property—with only a claim against the non-estate property constituting a "claim."  This distinction is then imported into § 362(c)(3)(A), making termination of the stay "with respect to the debtor" apply

to the debtor's non-estate property but not to property of the debtor's estate.  But § 102(2) makes no such distinction; its coverage extends to claims against any property in which the debtor has an interest, regardless of whether the property becomes part of the debtor's bankruptcy estate.  Thus, in *Johnson v. Home State Bank*, 501 U.S. 78, 85-87 (1991), the Supreme Court ruled that under § 102(2) a secured creditor held a non-recourse claim against the debtor's home, which, since the debtor owned the home at the time of the bankruptcy filing, was estate property.  In *In re Trapp*, 260 B.R. 267, 271 (Bankr. D.S.C. 2001), the  court made this point expressly, holding that under § 102(2), where "debtors own the Property as to which the bank holds a lien and . . . the Property is property of the estate," the bank "holds a 'claim' against the [d]ebtors."  The guidance given by § 102(2), then, actually contradicts the estate-only reading.  If, under § 102(2), stay termination "with respect to the debtor" allows collection actions against the debtor's non-estate property then it also allows collection actions—such as the bank's foreclosure in the current case—against the debtor's estate property.

More fundamentally, § 102(2) cannot be dispositive here.  Even if § 102(2) did treat claims against the debtor and the debtor's property together, distinguishing them from claims against estate property, § 362(a) does not.  The automatic stay separately treats actions against the debtor, the debtor's estate property and the debtor's non-estate property.  If stay termination "with respect to the debtor" referred to the scope of the stay under § 362(a), it would have to follow the terminology used in § 362(a).  In that context, "the debtor" cannot reasonably be read to include "the debtor's non-estate property"; it can only refer to per-

11

sonal actions against the debtor, creating the self-contradiction problem that, as discussed above, plagues the all-property exclusion.

    3.    *No exclusion from stay termination.*

The simplest explanation of the phrase "with respect to the debtor" in connection with stay termination is that it imposes no limitation but merely emphasizes the termination of the automatic stay in "the debtor's" case.

This "no-exclusion" reading avoids the difficulties of the all-property and estate-property exclusions. The stay would terminate both as to the debtor and the debtor's property (estate and non-estate) and so would allow "any action" against property securing a debt to proceed. This, in turn, would make meaningful the right of parties in interest to seek an extension of the stay, so as to prevent secured creditors from exercising rights against estate property that could be used to satisfy their claims. And finally, the no-exclusion reading would not make an unsupported distinction among the three categories of creditor actions covered by the automatic stay.

The no-exclusion reading, however, presents another contextual difficulty. There is no need to emphasize that termination of the stay under § 362(c)(3)A) applies in the debtor's case, since, after all, that is the only case to which it could apply. If terminating the stay "with respect to the debtor" does not limit stay termination in some way, § 362(c)(3)(A) would have the same effect without the phrase as with it. The no-exclusion reading thus makes the phrase "with respect to the debtor" surplusage, a disfavored statutory construction. *See Conn. Nat'l*

*Bank v. Germain*, 503 U.S. 249, 253 (1992) (stating that "courts should disfavor interpretations of statutes that render language superfluous").[6]

Courts have frequently noted that Congressional enactments sometimes contain surplusage, and the maxim to avoid it is not compulsory. *See United States v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2337 (2007) ("It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction that threatens to render [an] entire provision a nullity."); *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004) (noting that surplusage does "not always produce ambiguity" and that the "preference for avoiding surplusage is not absolute"); *Chickasaw Nation v. United States*, 534 U.S. 84, 85 (2001) ("The canon requiring a court to give effect to each word 'if possible' is sometimes offset by the canon permitting a court to reject words as mere surplusage if inadvertently inserted or if repugnant

---

[6] Several decisions have found the problem of surplusage raised by the no-exclusion reading particularly troubling when § 362(c)(3) is compared to § 362(c)(4). Paragraph (c)(4), also added by BAPCPA, provides that if an individual debtor has had two cases dismissed within the year of filing the debtor's pending case, the automatic stay "shall not go into effect" in the pending case. Paragraph (c)(4) does not include the phrase "with respect to the debtor." Since paragraph (c)(4) is otherwise largely parallel to paragraph (c)(3), the inclusion of "with respect to the debtor" in paragraph (c)(3) is seen as an intentional distinction in the operation of the two paragraphs. *See, e.g., Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813, 816 (B.A.P. 10th Cir. 2008) (stating that "if Congress meant to terminate the stay in its entirety [in § 362(c)(3)(A)], it would have done so in plain language as it did in § 362(c)(4)(A)(i)"). This analysis, however, is not compelling. Paragraphs (c)(3) and (c)(4) were not drafted together, and their parallelism is far from consistent. *See* Bartell, at 222-25 (2008) (discussing the drafting history and content of the two provisions).

to the rest of the statute.").[7]  Nevertheless, if a meaning can be attributed to stay termination "with respect to the debtor" that does not produce serious conflict with other provisions of the Bankruptcy Code, the no-exclusion interpretation should not be adopted.

    4.    *A spousal exclusion: distinguishing between the debtor and the debtor's spouse.*

A final possible interpretation of stay termination "with respect to the debtor" places its meaning in the context of joint cases filed by a married couple under § 302(a) of the Bankruptcy Code.  In a joint case, it may be that one of the spouses (a "serially-filing" spouse) had a prior bankruptcy case dismissed within a year of the pending filing, while the other (a "newly-filing" spouse) did not.  In such a case, the phrase "with respect to the debtor" can be read as referring to the serially-filing spouse, making that debtor subject to collection actions, both *in personam* and *in rem* (against estate and non-estate property) while leaving the stay completely in effect as to the newly-filing spouse's person and property.

_____

    [7] Section 362(c)(3) itself contains two obvious instances of surplusage in a single phrase, stating that the paragraph applies "if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed." First, "single or joint" cases are the only kinds of cases that exist, so the words "single or joint" create no limitation; they merely emphasize that the paragraph potentially applies in every case.  The phrase could have simply said "a case of the debtor" with no change in meaning.  Second, the provision that the earlier case must have been "pending . . . but dismissed" in the year of before the current filing is also surplusage; unless the case had been pending during that year, it could not have been dismissed.  The words "was pending" create no limitation; they merely emphasize that dismissal of the prior case had to occur in the year before the present case was filed.  The phrase could have referred to "a case dismissed within the preceding 1-year period," with again no change in meaning.

Like the no-exclusion reading, the spousal exclusion avoids the problems of
the property-exclusion interpretations, but it also avoids surplusage, giving a
reasonable meaning to the provision that all actions involving debts and prop-
erty securing debts may proceed "with respect to the debtor."  Moreover, a dis-
tinction between jointly-filing spouses is common in the Bankruptcy Code.  Un-
der § 302(b), the court is directed to determine in joint cases the extent to which
"the debtors' estates shall be consolidated."  Thus, the property of one spouse's
estate may well be administered separately from the other.  Also, several provi-
sions regarding joint cases added to the Code by BAPCPA distinguish between
"the debtor" and "the debtor's spouse."  *See, e.g.*, §§ 101(10A), 707(b)(7) and
1325(b).[8]

There do not appear to be any contextual problems with the spousal-
exclusion reading, and at least three courts have adopted it.  *See In re Parker*, 336
B.R. 678, 680-81 (Bankr. S.D.N.Y. 2006) (stating that § 362(c)(3) "expressly termi-
nates the stay only 'with respect to the *debtor*' in question" and so applies only to
"the acts of a specific debtor rather than joint debtors in the aggregate") (empha-
sis in original); *In re Jupiter,* 344 B.R. 754, 760, 762 n.12 (Bankr. D.S.C. 2006)

---

[8] Indeed, in a recent amendment to § 707(b), the identical phrase "with re-
spect to the debtor," if not surplusage, appears to be used just as the spousal-
exclusion suggests.  Section 707(b)(2)(D)(ii) of the Code, inserted by the National
Guard and Reservists Debt Relief Act of 2008, Pub. L. No. 110-438, 122 Stat. 5000,
provides that if a debtor has engaged in specified defense activities, a presump-
tion of abuse under § 707(b)(2)(A) cannot arise "with respect to the debtor."  The
only apparent meaning of the phrase in this context is to distinguish in a joint
case between a debtor who has performed the defined defense activities and the
debtor's spouse, who may not have.

(adopting the *Parker* interpretation of § 362(c)(3)(A) and reporting that all of the bankruptcy judges of the district concurred in the opinion);  *In re Haisley*, 350 B.R. 48, 50-51 (Bankr. E.D. La. 2006) (applying the *Parker* analysis).

Of the four possible readings of stay termination "with respect to the debtor," the spousal-exclusion is therefore the most plausible one in the context of the language of § 362 and of the Bankruptcy Code as a whole.  Based simply on the statutory language, it is the best reading of the law and could be adopted on that basis.  *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240-41 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.")

B.  *The history and policy underlying § 362(c)(3) are consistent with the spousal-exclusion reading.*

Regardless of  the analysis of the statutory language set out above, the overall complexity of the BAPCPA additions to § 362(c) might support the conclusion that terminating the stay "with respect to the debtor" is ambiguous.  If so, the legislative history of § 362(c)(3) may properly be consulted.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985) (when a statute is ambiguous, the court may seek guidance in the relevant legislative history): *United States v. Yellin (In re Weinstein)*, 272 F.3d 39, 48 (1st Cir. 2001) (where the Bankruptcy Code is ambiguous, courts look to "its historical context, its legislative history, and the underlying policies that animate its provisions").  The history of § 362(c)(3) is consistent with the spousal-exclusion interpretation, and it disproves the majority interpretation of an estate-property exclusion.

In 1994, Congress created a National Bankruptcy Review Commission to investigate problems in the bankruptcy system and suggest legislative solutions. *See* Bankruptcy Reform Act of 1994, Pub. L. 103-394, 108 Stat. 4106, §§ 602-03 (Oct. 22, 1994).  Among the problems the Commission considered was that of debtors filing successive bankruptcy cases to exploit the automatic stay—a problem the Commission discussed as arising particularly in Chapter 13:

> Some debtors file for Chapter 13 . . . on the eve of a foreclosure or eviction for the sole purpose of delaying the state legal process. When the threat passes, they dismiss their cases, only to file again when the mortgagee or landlord brings another legal action to seize control of the property.  The ability to file repeatedly for Chapter 13 relief increases a debtor's leverage in negotiations with creditors.  In regions where this problem is particularly acute, judges have devoted significant time and resources to developing tools to address this problem.

Nat'l Bankr. Review Comm'n, Report of the National Bankruptcy Review Commission (Oct. 20, 1997) § 1.5.5, text accompanying nn. 731-33 (footnotes omitted), *available at* http://govinfo.library.unt.edu/nbrc/reportcont.html (last visited April 27, 2009).

The Commission responded to this problem by suggesting that the automatic stay not go into effect in certain successive filings of bankruptcy cases.  In such cases, "no creditor actions would be halted, unless the court subsequently ordered that a stay be imposed," and so debtors would be discouraged "from filing a nonmeritorious . . . petition on the eve of a foreclosure sale merely to stay the sale . . . one of the most frequently cited uses of repeat Chapter 13 filings." *Id.*, text accompanying n. 744.

17

In the year after the Review Commission's report was released, the House
Judiciary Committee issued a report, No. 105-540, on H.R. 3150, "The Bankruptcy
Reform Act of 1998."  Section 121 of that bill, titled "Discouraging bad faith re-
peat filings," contained language essentially identical to BAPCPA's
§ 362(c)(3)(A), specifically providing for termination of the automatic stay "with
respect to the debtor."[9] The committee report explained that this provision was
directed precisely against the abuse the Review Commission had identified:

> The filing of a bankruptcy case causes the immediate imposition of
> an automatic stay, which prevents creditors from pursuing actions
> against debtors and their property.  In light of this, some debtors
> file successive bankruptcy cases to prevent secured creditors from
> foreclosing on their collateral.
>
> Section 121 remedies this problem by terminating the automatic
> stay in cases filed by an individual debtor under chapters 7, 11 and
> 13 if his or her prior case was dismissed within the preceding year.
> In the subsequently filed bankruptcy case, the automatic stay ter-
> minates 30 days following the filing date of the case . . . .

H.R. Rep. No. 105-540, at 80 (1998).

In the same year, the Senate Judiciary Committee issued a report, No. 105-
253, on S. 1301, the "Consumer Bankruptcy Reform Act of 1998."  Section 303 of
that bill was likewise essentially identical to current § 362(c)(3)(A) and included

---

[9] Section 121 stated: "If a single or joint case is filed by or against an indi-
vidual debtor under chapter 7, 11, or 13, and if a single or joint case of that debtor
was pending within the previous 1-year period but was dismissed, other than a
case refiled under a chapter other than chapter 7 after dismissal under section
707(b) of this title, the stay under subsection (a) with respect to any action taken
with respect to a debt or property securing such debt or with respect to any lease
will terminate with respect to the debtor on the 30th day after the filing of the
later case . . . ."  Bankruptcy Reform Act of 1998, H.R. 3150, 105th Cong. § 121
(1998).

the same provision for termination of the automatic stay "with respect to the debtor."[10]  The committee report described the provision this way:  "[W]ith respect to any action taken on a debt or property securing a debt, or any lease, the automatic stay shall terminate with respect to the property or debtor on the 30th day after the filing of the later case," and it stated that this provision would "greatly reduce abuses of the bankruptcy system by reducing the incentive to file for bankruptcy repeatedly without completing the bankruptcy process."  S. Rep. No. 105-253, at 39 (1998).

Between 1998 and 2005, when BAPCPA was enacted, bankruptcy reform legislation having largely the same content as the 1998 legislation was introduced and came close to passage.  *See* Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 485, 518-539 (2005).  The bill that was finally enacted contained the current language of § 362(c)(3)(A).  *See* S. 256, 109th Cong. § 302 (2005).  A House Judiciary Committee Report described the relevant language this way: "Section 302 of the Act amends section 362(c) of the Bankruptcy Code to terminate the automatic stay within 30 days in a chapter 7, 11, or 13 case filed by or against an individual

---

[10] Section 303 provided, "[T]he stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case if--(A) a single or joint case is filed by or against an individual debtor under chapter 7, 11, or 13; and (B) a single or joint case of that debtor (other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)) was pending during the preceding year but was dismissed."  Consumer Bankruptcy Reform Act of 1998, S. 1301, 105th Cong. § 303 (1998).

if such individual was a debtor in a previously dismissed case pending within

the preceding one-year period."  H.R. Rep. No. 109-31(I), at 69 (2005), *as reprinted

in* 2005 U.S.C.C.A.N. 88, 138.

From this legislative history, two points clearly emerge.  First, the stay ter-

mination provision in § 362(c)(3)(A) was intended to stop the bad faith successive

filing of bankruptcy cases from interfering with real estate foreclosures.  This

purpose would not be advanced by a provision that left the stay in effect as to the

debtor's pre-bankruptcy real estate.  Second, during the seven years in which a

provision for termination of the automatic stay "with respect to the debtor" was

pending in Congress, none of the several committee reports that discussed  the

provision ever suggested that the phrase drew a distinction between actions

against the debtor personally, actions against the debtor's estate property, and

actions against the debtor's non-estate property.  To the contrary, each of the re-

ports described the stay termination "with respect to the debtor" without exclud-

ing any property, as would be required to allow foreclosures to go forward in

situations of bad faith successive bankruptcy filings.

This history, then, is completely at odds with the estate-property exclusion

that the majority of published opinions have adopted.  The majority reading, giv-

ing § 362(c)(3) no effect on mortgage foreclosures, flatly defeats the legislative

purpose. The spousal-exclusion, on the other hand, is consistent with the legisla-

tive intent.  Nothing in the legislative history expresses a desire to deprive one

jointly-filing spouse of the protection of the automatic stay simply because the

other spouse may have been engaged in a bad-faith successive filing.  This his-

tory resolves any ambiguity in § 362(c)(3)'s termination of the stay "with respect

to the debtor" in favor of the spousal-exclusion.

## Conclusion

Since § 362(c)(3) terminates the automatic stay with respect to estate prop-

erty, the stay no longer applies to Deutsche Bank's foreclosure action.  The bank's

motion to confirm this termination of the stay will be granted.

Eugene R. Wedoff
United States Bankruptcy Judge

Dated: April 28, 2009